IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MG DESIGN ASSOCIATES, CORP. | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: _____ |
| | ) | |
| v. | ) | **JURY DEMAND** |
| | ) | |
| COSTAR REALTY INFORMATION, INC., APARTMENTS, LLC, d/b/a APARTMENTS.COM, and NORTHWIND ENTERPRISES, INC. d/b/a ATLANTIC EXHIBITS | ) ) ) ) ) ) | |

## COMPLAINT

Plaintiff MG DESIGN ASSOCIATES, CORP. ("MG Design"), by and through its attorneys, Duggan Bertsch, LLC, hereby complains of Defendants, COSTAR REALTY INFORMATION, INC. ("Costar"), APARTMENTS, LLC, d/b/a APARTMENTS.COM ("Apartments.com") and NORTHWIND ENTERPRISES, INC. d/b/a ATLANTIC EXHIBITS ("Atlantic"), as follows:

## NATURE OF CASE

1. This action involves a dispute over the design, and subsequent fabrication and installation of a large trade show exhibit for Defendants Costar and Apartments.com.

2. Plaintiff MG Design was engaged by Defendant Apartments.com, and its parent company, Costar, to design and construct several separate exhibits for the 2015 National Apartments Association Education Conference and Convention ("NAA Conference"). One such exhibit was a large scale, fifty foot by eighty foot display for Apartments.com (the "Subject Exhibit").

3. As is standard in the industry, MG Design performed the design work on an *ex gratis* basis while retaining ownership over the design, with the understanding that Apartments.com and Costar would engage MG Design to perform the subsequent fabrication and installation related thereto, and that the costs for design would be built into the production invoices that would follow.

4. The designs, containing numerous renderings, drawings, and technical specifications (the "Design Renderings"), were provided to Costar, with each page containing language clearly stating that the designs remained the property of MG Design.

5. Despite MG Design's expectation of an ongoing relationship, Costar and Apartments.com never engaged MG Design to perform the subsequent production work for the Subject Exhibit despite representations that it intended to do so. Costar and Apartments.com eventually ceased all further business relations with MG Design.

6. MG Design later learned that Costar had, in fact, utilized the Design Renderings as the basis for the Subject Exhibit. Costar had engaged a third-party, Atlantic Exhibits, to perform the production and installation work using MG Design's Design Renderings. Looking at a side-by-side comparison of the Design Renderings and the as built Subject Exhibit, the only reasonable conclusion is that the design was stolen.

7. None of the Defendants ever requested, nor did MG Design ever grant permission to use the Design Renderings to produce and install the Subject Exhibit. Defendant Costar willfully engaged a third-party manufacturer to construct the exhibit using MG Design's Design Renderings, and Defendant Atlantic Exhibits acted willfully in actually constructing the Subject Exhibit in derogation of the ownership statements explicitly set forth on each page of the Design

Renderings. Atlantic Exhibit's actions also interfered with MG Design's current and future business relationships with Costar and Apartments.com.

8. The wrongful conduct of the Defendants constituted copyright infringement, and supports several other claims against the Defendants based in contract and tort as set forth in this Complaint. These actions led to lost sales for MG Design, and cost savings and increased profits for each of the Defendants.

9. As a direct and proximate result of the wrongful conduct of the Defendants, MG Design has suffered lost sales in excess of $340,000 as a measure of actual damages compensable under the United States Copyright Act, and also seeks, among other things, compensatory damages and punitive damages for the willful and wanton conduct of the Defendants, and recovery of attorneys' fees and costs.

## THE PARTIES

10. Plaintiff, MG Design, is an Illinois Corporation with its principle place of business at 8778 100th Street, Pleasant Prairie, Wisconsin 53158.

11. Defendant Costar is a Delaware Corporation and has offices worldwide. Its corporate headquarters is located at 1331 L Street, NW, Washington, D.C. 20005. Costar also has an office located in Chicago, Illinois at 222 W. Adams Street, 15th Floor, Chicago, Illinois 60606, and is registered to do business in Illinois.

12. Upon information and belief, Defendant Apartments.com is a wholly owned subsidiary of Costar, with its primary office also located at 222 W. Adams Street, 15th Floor, Chicago, Illinois 60606. Apartments.com was previously located at 540 W. Madison Street, 14th Floor, Chicago, Illinois 60661, but upon information and belief, moved its offices at some point after being acquired by Costar in 2014.

3

13. Defendant Atlantic is a Virginia corporation with its principle place of business located at 4605 Brookfield Corporate Drive, Chantilly, Virginia 20151.

## JURISDICTION AND VENUE

14. Because this matter involves claims brought under the United States Copyright Act, this Court has original jurisdiction pursuant to 28 U.S.C. § 1338 and 28 U.S.C. § 1331.

15. This court also has subject matter jurisdiction over the claims, inclusive of any unregistered copyright claims. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

16. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

17. This court has personal jurisdiction over Defendants Costar and Apartments.com because these Defendants are licensed to conduct business in the state of Illinois, and have offices located in the state of Illinois.

18. This court has personal jurisdiction over Defendant Atlantic under the Illinois long-arm statute (735 ILCS 5/2-209).

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the actions and transactions at issue occurred within the Northern District of Illinois.

## FACTS COMMON TO ALL COUNTS

20. MG Design has operated for over fifty-five years, and is an industry leader specializing in custom trade show exhibits, trade show exhibit rentals, portable exhibit management, corporate meetings and events, branded environments, and engagement marketing campaigns.

21. As part of the creative process utilized in creating customized exhibits and environments for its customers, MG Design collaborates with its clients to fully understand brand, goals, image and audience. This design phase allows MG Design to create unique, customized products that meet the specific needs of each client.

22. Once the initial client consultation process has been consummated, MG Design employs its experienced design team of exhibit and graphic designers to develop an exhibit or environment using the latest materials, styles, and technology.

23. For MG Design, the design component is the critical building block for all of the other services that it offers. As it advertises on its website, design is "part of our name, and it's at the heart of everything we do."[1]

24. When MG Design creates customized designs for clients, it virtually always performs the subsequent phases of the development process, including fabrication, installation, dismantle, technical support, and project management for the exhibit.

25. MG Design typically performs the design work *ex gratis*, with the labor and costs associated with the design work incorporated into the full production invoice provided later.

26. To be sure, however, a significant amount of time, energy, and expense is expended for each newly created exhibit design. MG Design performs this work up front with the expectation that the client will full engage MG Design to perform all of the services necessary for successful implementation.

27. A vast majority of MG Design clients engage MG Design to perform all subsequent and ancillary work related to the initial design work.

---

[1] See http://www.mgdesign.com/services/design/

28. Each design that MG Design creates includes drawings and technical specifications. Critically, each design includes the following language:

> All designs and ideas embodied herein are the creative property of MG Design Associates Corp. They may not be reproduced in any manner without the express written approval of MG Design Associates Corp.

29. Defendant Costar is in the real estate information business. Upon information and belief, Costar owns several subsidiary companies including Apartments.com, which it acquired in or about April 2014.

30. Apartments.com was previously owned by Classified Ventures, Inc. before being acquired by Costar. MG Design has done business with Classified Ventures, Inc. since 2000, and through 2014, provided services for Apartments.com every year since.

31. Over the course of its fifteen year relationship with Apartments.com, MG Design developed strong, trusting working relationships with key Apartments.com personnel, several of whom continued to work for Apartments.com after it was acquired by Costar.

32. One Apartments.com employee that MG Design worked with regularly over its fifteen year relationship with Apartments.com was Tradeshow Manager Sharon Patenaude. Ms. Patenaude continued in her role as Tradeshow Manager after Apartments.com was acquired by Costar.

33. On or before April 28, 2015, Ms. Patenaude contacted Betty Kasper, MG Design Executive Vice President, about designing, producing, and managing exhibits for several Costar properties at the 2015 NAA Conference, including a new fifty foot by eighty foot (50 ft x 80 ft) exhibit for Apartments.com. Ms. Patenaude came to MG Design's office in Pleasant Prairie, Wisconsin to discuss plans for the NAA Conference with MG Design personnel.

34. Given the long-standing relationship between MG Design and Apartments.com, and in light of the truncated timeframe for the upcoming NAA Conference scheduled for June 25-26, 2015, MG Design quickly began working on the designs for the new Subject Exhibit.

35. Neither Costar nor Apartments.com provided MG Design with any pre-drawn, or previously developed design renderings prior to MG Design commencing work on the Subject Exhibit Design Renderings.

36. The Subject Exhibit was designed by MG Design employee, Jerry O'Brien, and initial renderings were sent to Apartments.com, via email to Ms. Patenaude on or about May 7, 2015. A second draft was provided on or about May 11, 2015. Design Renderings for the Subject Exhibit are attached hereto as Exhibit A.

37. The Design Renderings show the proposed Subject Exhibit from various angles, depicting a number of distinctive elements including, but not limited to a large rectangular video wall as a backdrop for the entire exhibit; black flooring with sections of color; a Tesla automobile as a focal point of the exhibit to be offered in a prize contest; a large geometric polygon hanging overhead with black on the vertical sides and a green-yellow glow on the underside containing the Apartments.com logo in raised lettering; similar geometric polygons hanging overhead with black vertical sides and glowing colors on the underside; and media demo booths with smaller computer screens designed for customer interaction. Exhibit A.

38. Each and every page of the Design Renderings contained the standard language reserving MG Design's ownership and control over the designs:

> All designs and ideas embodied herein are the creative property of MG Design Associates Corp. They may not be reproduced in any manner without the express written approval of MG Design Associates Corp.

Exhibit A.

39. The Design Renderings are a protected work of authorship as defined by the United States Copyright Act (the "Act"). 17 U.S.C. § 102.

40. Consistent with the reservation language in the Design Renderings, and pursuant to to 17 U.S.C. § 106, MG Design retained exclusive right to reproduce the Design Renderings; to prepare derivative works based upon the Design Renderings; to display the work publically, to distribute copies of the Design Renderings; and to license, transfer, or sell the right to use the Design Renderings.

41. After providing Costar with the Design Renderings, MG Design was alerted via email on May 13, 2015 that Costar Director of Meetings & Events, Meghan Reames, would be handling the Apartments.com account moving forward, in place of Ms. Patenaude. Upon information and belief, Ms. Patenaude and other pre-acquisition Apartments.com employees were terminated by Costar shortly thereafter.

42. On the same day, May 13, 2015, MG Design was notified that Costar would not be doing any additional business with MG Design including, but not limited to the production of the Subject Exhibit.

43. While MG Design was disappointed that it was no longer going to be working with Costar or its affiliates, it simply assumed the company decided to head in another direction. No one from Costar or Apartments.com ever expressed any displeasure as to the work performed by MG Design. In fact, Ms. Patenaude had expressed that she "loved" the design that MG Design had developed.

44. MG Design eventually assisted Costar in coordinating the transfer of previously constructed exhibit components that had been stored in MG Design warehouses over the course of

its previous fifteen year relationship with Apartments.com. Per direction from Costar, the physical components were transferred to the possession of Atlantic Exhibits.

45. MG Design then sent an invoice for just the design work to Costar since there would be no follow-up production work based upon the Design Renderings, and MG Design needed to be paid for the labor expended in creating the Design Renderings. Costar paid the $16,500 design-only invoice in full. The paid invoice contained the following language:

> Designs remain the property of MG Design and may not be produced in any manner without the express written approval of MG Design Associates, Corp.

A copy of the invoice is attached hereto as Exhibit B.

46. After the invoice was paid, MG Design presumed that all matters with Costar were resolved without issue. However, during the 2015 NAA Conference in June 2015, MG Design discovered that the Design Renderings had, in fact, been used as the basis for the Subject Exhibit. Photographs of the actual constructed Subject Exhibit are attached hereto as Group Exhibit C.

47. Costar contracted with Atlantic Exhibits to fabricate and install the Subject Exhibit.

48. Given the nearly identical nature of the Design Renderings and the as-built Subject Exhibit, Atlantic clearly used the Design Renderings to create the Subject Exhibit.

49. Costar remains an active customer of Atlantic. Atlantic's website promotes the Subject Exhibit in its portfolio on its website, and states the scope of the work performed for Apartments.com includes "[d]esign, fabrication, warehousing, transportation, installation/dismantle, av/technical support and ongoing program management." Two screen captures taken from www.atlanticexhibits.com on March 15, 2016 are attached hereto as Group Exhibit D.

50. At no time have any of the Defendants contacted MG Design to request permission to use the Design Renderings or construct exhibits based thereon.

9

51. Based on the design parameters, had MG Design performed the fabrication and installation work for Costar, MG Design would have charged, and Costar would have paid over $340,000.

52. On information and belief, Defendants Costar and Apartments.com received a financial benefit directly attributable to the infringement. Specifically, Costar benefited from cost savings incurred through engaging Atlantic instead of MG Design to perform fabrication and installation work for the Subject Exhibit. Costar also benefited by way of profits derived from customers and potential customers who visited the exhibit at the 2015 NAA Conference.

53. On information and belief, Defendant Atlantic also received a financial benefit directly attributable to the infringement. Specifically, Atlantic benefited from cost savings incurred due to the fact that the initial Design Renderings for the exhibit were performed by MG Design, and the fact that Atlantic was paid monies that otherwise would have been paid to MG Design. Atlantic also continues to benefit from the fact that it is able to promote, via its website and elsewhere, the infringing design as its own, attracting new customers.

54. On information and belief, a large number of people attended the 2015 NAA conference and visited the infringing exhibit. Likewise, upon information and belief, a large number of people have visited the Atlantic website displaying photographs of the exhibit with content stating that the exhibit was designed by Atlantic. (Group Exhibit D).

55. At all times relevant hereto, Defendants knew that the Design Renderings remained the property of MG Design, yet they acted in a concerted manner in willful disregard for this fact, and used the Design Renderings to fabricate an exhibit based thereon.

56. As a direct and proximate result of Defendants' conduct, MG Design has been substantially harmed.

10

## COUNT I
### (Direct Copyright Infringement, 17 U.S.C. 501 et seq.)
*All Defendants*

57. MG Design reasserts and realleges each and every allegation contained in Paragraphs 1-56 above as though fully set forth herein.

58. The Design Renderings are an original creative work of authorship that include pictorial, graphic, and architectural elements.

59. MG Design is the valid holder of the copyright in the Design Renderings by way of the fact that the Design Renderings were created by an employee of MG Design working within the course and scope of his employment.

60. As the valid holder of the copyright in the Design Renderings, MG Design has the exclusive right to prepare derivative works based upon the copyrighted work, and to distribute copies of the copyrighted work either by sale, license, or transfer of ownership. 17 U.S.C. § 106.

61. MG Design's valid copyright extends to derivative works based upon original works of authorship, including the Subject Exhibit that was based upon the Design Renderings pursuant to 17 U.S.C. § 103.

62. MG Design has not licensed, sold or transferred ownership of the Design Renderings to any of the Defendants, or otherwise permitted the use of the Design Renderings by any of the Defendants. Likewise, MG Design has not granted a license to any of the Defendants to use the Design Renderings in order to create derivative works therefrom.

63. In violation of MG Design's exclusive rights, the Defendants have reproduced, distributed, adapted, and publicly displayed works to which MG Design holds a valid copyright.

64. Given the nature of the relationships between the parties, and in light of the fact that the Design Renderings explicitly state that MG Design has retained ownership over the Design Renderings, the actions of the Defendants constitute willful copyright infringement.

65. Upon information and belief, thousands upon thousands of people have viewed the infringing content either at the 2015 NAA Conference, via Defendant Atlantic's website, or via other mediums.

66. Defendants have profited from their infringing conduct.

67. As a direct and proximate result of Defendants' conduct, MG Design has been substantially harmed.

68. Upon information ad belief, Defendants Costar and Apartments.com intend to continue use of the Subject Exhibit for future promotional activity at tradeshows.

69. Upon information and belief, Defendant Atlantic intends to continue to promote the Subject Exhibit in its website portfolio and claim that it performed the design work for the Subject Exhibit.

WHEREFORE, MG Design respectfully requests judgment in its favor on this Count I, and an award monetary damages and further relief as follows:

a. Actual damages and any profits of the Defendants attributable to the infringement pursuant to 17 U.S.C. 504(b);

b. Issuance of a temporary and permanent injunction pursuant to 17 U.S.C. 502 preventing the Defendants from further use or display of the infringing material in any medium, including the Design Renderings and the Subject Exhibit derived therefrom; and

c. Such other relief that this Court deems just and proper.

**COUNT II**
**(Vicarious Copyright Infringement)**
*All Defendants*

70. MG Design reasserts and realleges each and every allegation contained in Paragraphs 1-69 above as though fully set forth herein.

71. At all material times hereto, all Defendants, and each of them, had the legal right and practicable ability to supervise, control, limit, and stop, the infringing conduct of its employees, and agents including, but not limited to the other Defendants to this action.

72. Defendants Costar and Apartments.com were the initial recipients of the Design Renderings, and had ability and responsibility to prevent infringement of the Design Renderings. Instead, Costar and/or Apartments.com passed the Design Renderings to Defendant Atlantic and commissioned the fabrication of the Subject Exhibit based upon the Design Renderings such that it induced, caused, and materially contributed to the infringing conduct of Atlantic.

73. Likewise, upon receipt of the Design Renderings from Costar and Apartments.com, Defendant Atlantic had the ability and responsibility to refuse to fabricate the exhibit based thereon, but instead, Atlantic worked in conjunction with Costar and/or Apartments.com in a manner that induced, caused, or contributed to the infringing conduct of Costar and Apartments.com.

74. As a direct and proximate result of Defendants' refusal to exercise their respective rights to stop or limit the infringing conduct of others, Defendants, and each of them, profited from the direct infringement of others, and therefore, are guilty of contributory copyright infringement.

75. Defendants contributory infringement has directly and proximately caused damage to MG Design.

WHEREFORE, MG Design respectfully requests judgment in its favor on this Count II, and an award monetary damages and further relief as follows:

a. Actual damages and any profits of the Defendants attributable to the infringement pursuant to 17 U.S.C. 504(b);

b. Issuance of a temporary and permanent injunction pursuant to 17 U.S.C. 502 preventing the Defendants from further use or display of the infringing material, including the Design Renderings and the Subject Exhibit derived therefrom; and

c. Such other relief this Court determines is just and proper.

## COUNT III
### (Fraudulent Misrepresentation)
*Costar and Apartments.com*

76. MG Design reasserts and realleges each and every allegation contained in Paragraphs 1-75 above as though fully set forth herein.

77. In April and May 2015, employees of Costar and Apartments.com reached out to MG Design and requested that MG Design create Design Renderings for the Subject Exhibit, among other exhibits created for Costar and its various subsidiary properties.

78. Employees of Costar and Apartments.com made representations to MG Design indicating their intent to engage MG Design for all phases of the work on the Subject Exhibit, including design, fabrication, installation and dismantle, technical support, and ongoing program management.

79. Costar and Apartments.com engaged in a course of conduct that was clearly indicative of their intent to move forward with the project. For example, they provided feedback to MG Design after a first draft of the Design Renderings were completed so as to induce MG Design to make edits and re-submit revised Design Renderings four days later.

80. Given that Apartments.com was a longtime customer of MG Design, MG Design justifiably relied on the statements of Costar and Apartments.com employees, and created the Design Renderings on a rush basis, and without up-front payment with the expectation that the amount would be billed later along with the other work to be performed.

81. On May 13, 2015, just two days after MG Design re-submitted Design Renderings to Costar and Apartments.com, and while MG Design was waiting for feedback on the same, Costar pulled all of its business from MG Design.

82. The statements made to MG Design were intended to induce it to act, and at the time the statements were made, the inducing statements were known by Costar and Apartments.com to be false.

83. The May 13, 2015 correspondence from Costar indicated that by that time, they had already contracted with another exhibit house, Atlantic Exhibits.

84. Statements made by Costar and Apartments.com were made willfully, wantonly, and with the intent to defraud MG Design.

85. As a direct and proximate result thereof, MG Design has suffered damages.

WHEREFORE, MG Design respectfully requests that this Court enter a judgment in its favor on this Count III, and award it monetary damages, including MG Design's attorneys' fees and costs, punitive damages and such other relief as the Court determines is just and proper.

### COUNT IV
**(Breach of Contract)**
*Costar and Apartments.com*

86. MG Design reasserts and realleges each and every allegation contained in Paragraphs 1-85 above as though fully set forth herein.

87. The invoice attached as Exhibit B evinces a valid and enforceable contract between MG Design and Costar and/or its subsidiary, Apartments.com.

88. Costar and/or its subsidiary, Apartments.com, accepted the terms of the contract by paying the $16,500 owed for design work.

89. MG Design performed all requirements pursuant to the agreement between the parties, including the creation of the Design Renderings for the Subject Exhibit.

90. Despite issuing payment in the amount of $16,500 in satisfaction of its payment obligations pursuant to the invoice, Costar and Apartments.com are in breach of the agreement by failing to comply with the terms set forth that explicitly state that the designs shall "remain the property of MG Design and may not be reproduced in any manner without the express written approval of MG Design Associates Corp." Exhibit B.

91. Costar and Apartments.com breached the terms of the agreement by reproducing the Design Renderings in a tangible medium as evidenced by the Subject Exhibit at the 2015 NAA Conference.

92. As a direct and proximate result of Costar's and Apartments.com's breach of the agreement, MG Design has suffered damages.

WHEREFORE, MG Design respectfully requests that this Court enter a judgment in its favor on this Count IV, and award it monetary damages and such other relief as the Court determines is just and proper.

## COUNT V
### (Tortious Interference with Contract)
*Atlantic*

93. MG Design reasserts and realleges each and every allegation contained in Paragraphs 1-92 above as though fully set forth herein.

94. MG Design had an ongoing contractual relationship with Costar and Apartments.com evinced by the paid invoice for design work (Exhibit B), written communications demonstrating an offer and acceptance for work performed, and pre-existing contractual agreements between MG Design and Apartments.com that were assigned to or assumed by Costar when Costar acquired Apartments.com in 2014.

95. Upon information and belief, Defendant Atlantic was aware of the existence of MG Design's contractual relationship with Costar and Apartments.com.

96. Upon information and belief, Atlantic engaged in intentional and unjustified efforts to induce Costar to breach its contractual obligations with MG Design by offering to, and actually fabricating and installing the Subject Exhibit in derogation of contractual language indicating that the Design Renderings remained the property of MG Design.

97. As a direct and proximate result of Atlantic's conduct, Costar and Apartments.com did, in fact, breach their contractual obligations to MG Design.

98. As a direct and proximate result of Costar's and Apartments.com's subsequent breach, MG Design has suffered damages.

WHEREFORE, MG Design respectfully requests that this Court enter a judgment in its favor on this Count V, and award it monetary damages, including MG Design's attorneys' fees and costs, punitive damages and such other relief as the Court determines is just and proper.

### COUNT VI
**(Tortious Interference with Prospective Economic Advantage)**
*Atlantic*

99. MG Design reasserts and realleges each and every allegation contained in Paragraphs 1-93 above as though fully set forth herein.

100. In addition to MG Design's contractual relationship with Costar and Apartments.com, MG Design had a realistic expectation of additional, ongoing, and continuous business relationships with Costar and Apartments.com.

101. Specifically, MG Design completed the Design Renderings for Costar and Apartments.com on an *ex gratis* basis with the reasonable expectation that Costar and Apartments.com would then engage MG to perform additional services related to the project including fabrication, installation, dismantle, technical support, and ongoing project management.

102. It is extremely rare for MG Design to create Design Renderings only to have the client decline to have MG Design perform the production work related thereto.

103. It is customary and standard in the tradeshow exhibit industry that the entity that provides the design work for an exhibit will also perform all follow-up production work related thereto.

104. Accordingly, MG Design had a reasonable and legitimate expectation that it would enter in a valid relationship with Costar and Apartments.com to perform the fabrication, installation, dismantle, technical support, and ongoing project management for the Subject Exhibit.

105. Atlantic, being familiar with custom and practice in the tradeshow exhibit industry, knew that MG Design had a reasonable expectation that it would perform all follow-up production work related to the Subject Exhibit after completing the Design Renderings.

106. Atlantic also knew that Costar desired to have a significant presence at the 2015 NAA Conference, and knew, given the tight time frame for completion and scope of the work to be performed for the NAA Conference, that Costar had an existing and ongoing relationship with MG Design that made it possible to even complete the full scope of work desired by Costar for the 2015 NAA Conference.

107. Despite knowledge of MG Design's reasonable and legitimate expectation that it would perform the post-design work for the Subject Exhibit, Atlantic purposefully interfered with MG Design's expectation of further and ongoing work with Costar and Apartments.com.

108. As a direct and proximate result of the interfering acts of Atlantic, MG Design's valid business expectation was terminated, and it has suffered damages.

WHEREFORE, MG Design respectfully requests that this Court enter a judgment in its favor on this Count VI, and award it monetary damages, including MG Design's attorneys' fees and costs, punitive damages and such other relief as the Court determines is just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action of all issues so triable.

MG DESIGN ASSOCIATES, CORP.

By: \_\_\_\_\_/s/Brian C. Konkel_____
      One of its Attorneys

DUGGAN BERTSCH, LLC
Timothy Liam Epstein, Esq.
Brian C. Konkel, Esq.
303 West Madison – Suite 1000
Chicago, IL 60606
(312) 263-8600
tepstein@dugganbertsch.com
bkonkel@dugganbertsch.com