# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MG DESIGN ASSOCIATES, CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 C 5166 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| COSTAR REALTY INFORMATION, INC., | ) |
| APARTMENTS, LLC d/b/a | ) |
| APARTMENTS.COM, and NORTHWIND | ) |
| ENTERPRISES, INC. d/b/a ATLANTIC | ) |
| EXHIBITS, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Believing Defendants used its work to construct a tradeshow exhibit, Plaintiff MG Design Associates, Corp. ("MG") brings suit against Defendants CoStar Realty Information, Inc. ("CoStar"), Apartments, LLC d/b/a Apartments.com ("Apartments"), and Northwind Enterprises, Inc. d/b/a Atlantic Exhibits ("Atlantic"), alleging copyright infringement in violation of the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 101 *et seq.*, fraudulent misrepresentation, breach of contract, and tortious interference with both contract and prospective economic advantage. Defendants move to dismiss MG's claims for lack of personal jurisdiction and for failure to state a claim. The Court finds that Defendants possess sufficient contacts with Illinois to authorize personal jurisdiction, but that MG fails to properly allege a copyright claim. With the dismissal of the federal claims, the Court declines to address MG's state law claims until it alleges a basis for the Court's subject matter jurisdiction. The Court therefore denies in part and grants in part Defendants' motions [11, 23], dismissing MG's lawsuit without prejudice.

# BACKGROUND[1]

MG and Atlantic both design and construct trade show exhibits. In 2014, CoStar, a real estate information company acquired Apartments, which runs the website Apartments.com. Before the events at issue here, MG had a 15-year business relationship with Apartments. In April 2015, Apartments' Tradeshow Manager, Sharon Patenaude,[2] contacted MG to design a trade show exhibit for an upcoming conference in Las Vegas, Nevada. Patenaude communicated with MG's Executive Vice President and then traveled to MG's office in Pleasant Prairie, Wisconsin to discuss design plans. MG produced an initial set of design renderings, proposing a layout and appearance for an Apartments-branded exhibit. After receiving feedback, MG submitted a second set of design renderings (the "Renderings") and waited for a response. But two days later, MG learned that it would not handle any future work for CoStar and Apartments and that it would not construct an exhibit for the Las Vegas conference. MG sent an invoice for the Renderings to CoStar, and CoStar paid MG $16,500 for the work. MG would have charged significantly more, approximately $340,000, had it also constructed an exhibit based on the Renderings.

After CoStar paid the invoice for the Renderings, CoStar hired Atlantic to construct an exhibit at the Las Vegas conference (the "Las Vegas Exhibit"), using the Renderings "as the basis" for the construction. Doc. 1 ¶ 46. Atlantic then advertised on its website that it designed

---

[1] The facts in the background section are taken from MG's complaint and exhibits attached thereto and are presumed true for the purpose of resolving Defendants' motions to dismiss pursuant to Rule 12(b)(6). *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). Facts necessary to ruling on Defendants' motions to dismiss pursuant to Rule 12(b)(2), including facts from affidavits and other materials outside the Complaint, appear below with citations to relevant source material.

[2] Patenaude affirms that she was an employee of CoStar, performing work for Apartments, during the events at issue. *See generally* Doc. 31-1 (First Patenaude Declaration); Doc. 35-1 (Second Patenaude Declaration).

the Las Vegas Exhibit. The Renderings bore a legend on each page stating "[a]ll designs and ideas . . . are the creative property of [MG]," the paid invoice stated that the Renderings "remain the property of [MG]," and both the invoice and the Renderings stated that the Renderings "may not be reproduced in any manner without the express approval of [MG]." Doc. 1 ¶¶ 38, 45; Doc. 1-2. MG never received a request from anyone to use the Renderings or to construct exhibits based on the Renderings. MG has not performed any work for CoStar or Apartments following this dispute.

MG is an Illinois corporation with its principal place of business in Pleasant Prairie, Wisconsin. Doc. 1 ¶ 10. CoStar is a Delaware corporation with its corporate headquarters in Washington, D.C. Doc. 1 ¶ 11; Doc. 12-1 (Campbell Declaration) ¶ 2. CoStar has an office in Chicago, Illinois and is registered to do business in Illinois. Doc. 1 ¶ 11. Apartments is a Delaware limited liability company, and CoStar is Apartments' sole member. Doc. 12-1 ¶¶ 3–4. Although MG alleges that Apartments' primary office is in Chicago, Doc. 1 ¶ 12, Apartments' corporate executives, including its Chief Executive Officer, Executive Vice President of Operations, Executive Vice President of Accounting and Finance, and General Counsel and Secretary have "directed, controlled, and coordinated its business from Washington, D.C," Doc. 12-1 ¶ 7. Apartments' only other corporate officer, its President, resided in Illinois until January 2016. Doc. 12-1 ¶ 9. Between April 2014 and the summer of 2015, Apartments maintained its departments for product design and development, multi-family field sales, finance, and customer service in Chicago. *Id.* ¶ 11. Apartments then moved the "majority of [its] departments," including its finance, marketing, and customer service departments, to Atlanta, Georgia between the summer of 2015 and January 2016. *Id.* ¶ 12. It is unclear whether any departments remain in Chicago. *See id.* Atlantic is a Virginia corporation with its principal place of business in

Chantilly, Virginia, Doc. 24-1 (Beach Declaration) ¶ 2, and competes with MG in their design field and for clients, *id.* ¶ 9.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a party. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Personal Jurisdiction

CoStar, Apartments, and Atlantic each argue that the Court does not have personal jurisdiction over them. Because Defendants raise a jurisdictional issue with respect to MG's claims, the Court addresses it first. *Bunker Ramo Corp. v. United Bus. Forms, Inc.*, 713 F.2d 1272, 1279 (7th Cir. 1983). MG brings claims under the Copyright Act and state law. The Copyright Act does not authorize nationwide service of process, and so the Court may exercise jurisdiction over Defendants only if authorized both by the United States Constitution and Illinois law. *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 902 (N.D. Ill. 2015); *see also United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1046–47 (N.D. Ill. 2015) ("When subject matter jurisdiction rests on a federal question . . . and supplemental jurisdiction, and no special federal rule for personal jurisdiction applies, as here; this Court may exercise personal jurisdiction over Defendant only if it is (1) proper under the forum state's personal jurisdiction statute and (2) comports with the requirements of the Due Process Clause.").

Illinois "permits its courts to exercise personal jurisdiction on any basis permitted by the constitutions of both Illinois and the United States." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); 735 Ill. Comp. Stat. 5/2-209. To the extent the federal constitutional and Illinois statutory inquiries diverge, "the Illinois constitutional standard is likely more restrictive than its

federal counterpart," but both essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable and thus a single inquiry suffices. *KM Enters, Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013); *C.H. Johnson Consulting, Inc. v. Roosevelt Rds. Naval Station Lands & Facilities Redevelopment Auth.*, No. 1:12-cv-08759, 2013 WL 5926062, at *2 (N.D. Ill. Nov. 5, 2013). The Court, therefore, asks one constitutional question: do Defendants have "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice[?]'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1984).

Personal jurisdiction comes in two forms: general and specific. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). General jurisdiction arises when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). A defendant is subject to general jurisdiction only where its contacts with the forum state are so substantial that it can be considered "constructively present" or "at home" in the state. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011); *Purdue*, 338 F.3d at 787; *see also Tamburo*, 601 F.3d at 701 ("The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence."). Alternatively, the Court has specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those

activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation" and "the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, --- U.S. ----, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014). MG elects to demonstrate that the Court has specific jurisdiction over Defendants.[3]

> To find specific jurisdiction:
>
> > (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland*, 682 F.3d at 674 (citations omitted). "Whether a defendant has purposefully directed activities at a forum 'depends in large part on the type of claim at issue'" and "whether the conduct underlying the claims was purposely directed at the forum state." *Monster Energy Co.*, 136 F. Supp. 3d at 903 (quoting *Felland*, 682 F.3d at 674). There is no "'pendent' or 'supplemental' theory of specific personal jurisdiction," and "personal jurisdiction over the defendant must be established as to each claim asserted." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1048–49 (N.D. Ill. 2016) (rejecting plaintiffs' attempts to establish personal jurisdiction over defendants

---

[3] Although MG mentions in passing that it could show there is general jurisdiction over CoStar and Apartments, it makes no effort to show this is the case and instead argues for specific jurisdiction. *See* Doc. 31 at 6 ("While there is, arguably, sufficient grounds to assert general jurisdiction over the Defendants based upon information in Ms. Campbell's Declaration (ECF No. 12, Ex. A), the overwhelming evidence makes clear that the principle of specific jurisdiction should subject CoStar and Apartments to the jurisdiction of this Court."). Because MG does not make additional arguments on general jurisdiction and it is not the Court's duty to do so for MG, the Court will only address the issue of specific jurisdiction.

by invoking similarities between defendants' conduct against other plaintiffs that established specific jurisdiction and defendants' conduct against other plaintiffs that was related to conduct that created personal jurisdiction); *see also Zivitz v. Greenburg*, No. 98 C 5350, 1999 WL 984397, at *7 n.3 (N.D. Ill. Oct. 25, 1999) (common claims against multiple defendants could only proceed where personal jurisdiction existed independently for each claim over each defendant).

      A.        **CoStar and Apartments**

The Court considers whether CoStar and Apartments each have had minimum contacts with Illinois, determining whether they each have a "substantial connection" with Illinois, or, if their actions otherwise connect them to Illinois in a "meaningful way" by focusing on (1) the relevance of their contacts with Illinois and (2) how meaningful those contacts were and/or are. *Walden*, 134 S. Ct. at 1121, 1122–23, 1125; *uBid, Inc.*, 623 F.3d at 426–32.

MG first argues that the Court has specific jurisdiction because "[t]he transaction that is the root of this dispute is design work performed by MG Design, an Illinois corporation." Doc. 31 at 6. But MG's actions cannot establish specific jurisdiction over Apartments and CoStar using only MG's state of incorporation because "the plaintiff cannot be the only link between the defendant and the forum." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (quoting *Walden*, 134 S. Ct. at 1122).

MG next points to its deal with Apartments to design the Renderings for the marketing space in Las Vegas, arguing that the actions of CoStar and Apartment's alleged agent—Patenaude, CoStar's Tradeshow Manager and coordinator of the Apartments exhibit for the Las Vegas conference—show the necessary contacts with Illinois. Importantly, Patenaude was

8

stationed in Illinois to work for CoStar and Apartments,[4] and CoStar and Apartments maintained offices there for marketing and tradeshow work. "Where a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239, 2 L. Ed. 2d 1283 (1958)). Setting up offices in and sending employees to the forum state for tradeshow operations is enough for minimum contacts in this case. *Cf. McIntyre*, at 564 U.S. at 886 (holding that defendant could not be brought to court in New Jersey and noting that defendant did not have an office, property, or employees in the state); *Goodyear*, 564 U.S. at 921 ("In contrast to the parent company, Goodyear USA, which does not contest the North Carolina courts' personal jurisdiction over it, petitioners are not registered to do business in North Carolina. They have no place of business, employees, or bank accounts in North Carolina."); *see also Scovill Mfg. Co. v. Dateline Elec. Co.*, 461 F.2d 897, 900 (7th Cir. 1972) (employee attendance in Illinois for business purposes related to dispute authorizes personal jurisdiction over the employer). CoStar registered to do business in Illinois, Apartments placed its marketing department in Illinois, and CoStar located its employee responsible for Apartments' tradeshows in Illinois. Defendants argue that their operations in Illinois are merely incidental to specific jurisdiction, but their presence in Illinois is purposeful. Despite keeping the core of their operations in Washington, D.C., CoStar and Apartments placed their trade show operation and the employee running that operation in Illinois,; further, that operation is directly related to MG's

---

[4] CoStar and Apartments do not challenge MG characterizing Patenaude as an "agent" of both Defendants.

claims. CoStar and Apartments therefore both have the necessary contacts with Illinois to authorize personal jurisdiction.

The Court also notes that the parties ignore MG's breach of contract claim against CoStar and Apartments. "With respect to interstate contractual obligations, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct 2174, 85 L.Ed.2d 528 (1985) (internal quotation marks omitted) (citation omitted); *see also* 735 Ill. Comp. Stat. § 5/2-209(a)(7) (Illinois long-arm statute granting specific jurisdiction over a defendant that engages in the "making or performance of any contract or promise substantially connected" to Illinois). The Supreme Court "emphasize[s] the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" *Burger King Corp.*, 471 U.S. at 473 (citation omitted). Therefore "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are the factors that guide the issue of purposeful availment. *Id.* at 479 (internal quotation marks omitted) (citation omitted). Similarly, Illinois courts consider "(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (citation omitted). The parties' negotiation, course of dealing, relationship, and actions, and the alleged contract terms all meld into MG's copyright and tort claims. The Court therefore finds that there is sufficient connection to Illinois to exercise

personal jurisdiction over MG's breach of contract claim against both CoStar and Apartments as well.

CoStar and Apartments do not raise any issue with fair play and substantial justice, *see generally* Doc. 35 at 5–6, and there is no reason to think that because Defendants have, or at least had until recently,[5] operations in Illinois related to the substantive dispute, Defendants would suffer any prejudice in litigating the case here. *See, e.g.*, *Smart Oil, LCC v. DW Mazel, LLC*, No. 15 C 8146, 2016 WL 521071, at *4 (N.D. Ill. Feb. 10, 2016) ("Defendants' contacts with the forum state make it reasonable to litigate this case in Illinois."). Therefore, the Court finds that it has specific jurisdiction over CoStar and Apartments.

**B.    Atlantic**

Atlantic argues that MG does not allege that Atlantic had sufficient contacts with Illinois to authorize specific jurisdiction. In response, MG argues that it has sufficiently alleged facts for specific jurisdiction over Atlantic because it alleges (1) MG, an Illinois corporation, felt its injury in Illinois and (2) Atlantic intentionally interfered with MG's contractual and business relationships with companies conducting business in Illinois and doing business with an Illinois corporation and demonstrated an intent to affect an Illinois interest.[6] The fact that MG suffered

---

[5] CoStar and Apartments' affiant does not attest that Apartments moved all of its operations out of Chicago to Atlanta. *Cf.* Doc. 12-1 ¶ 12 ("Between the summer of 2015 and January 2016, the majority of departments for [Apartments] were relocated to Atlanta, Georgia.").

[6] Both MG and Atlantic fail to discuss whether there is specific jurisdiction over the copyright claims, brought against all Defendants, including Atlantic, in Counts I and II. Atlantic's opening brief does not specifically address the copyright claims, arguing only that "MG has not alleged that Atlantic has *any* contacts (let alone substantial suit-related contacts) with the state of Illinois." Doc. 24 at 6 (emphasis in original) (footnote omitted). In its response, MG chooses to focus exclusively on "[t]wo of the claims against Atlantic . . . tortious interference with contract (Count V) and tortious interference with prospective economic advantage (Count VI)." Doc. 31 at 8. Atlantic, for its part, seems content to proceed as if only specific jurisdiction for the state law tort claims is at issue, failing to argue in reply that MG cannot establish *prima facie* specific jurisdiction over Atlantic for the copyright claim. *See generally* Doc. 34 at 4–6. Without clear indication whether personal jurisdiction over Atlantic for the copyright claims is at issue and because MG alleges Atlantic intentionally infringed on MG's copyright, it appears

injury in Illinois, standing alone, is insufficient to demonstrate minimum contacts. *See Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 802 (after *Walden*, harming a plaintiff from the forum state does not create sufficient minimum contacts for specific jurisdiction because the plaintiff cannot be the defendant's only link to the forum). Similarly, while MG also argues that CoStar and Apartments' connections to Illinois show that Atlantic targeted Illinois, "[c]ontacts between . . . other third parties and the forum do not satisfy this requirement." *Id.* at 801. MG cannot rely on CoStar and Apartments to prove that this Court has personal jurisdiction over Atlantic. The Court therefore turns to MG's contention that Atlantic intentionally affected an Illinois interest.

MG alleges that Atlantic interfered with MG's business relationships with CoStar and Apartments by taking MG's work and then wrongfully using the Renderings for Atlantic's profit in violation of copyright and state law.[7] MG argues it satisfies its burden of establishing that the Court has specific jurisdiction over Atlantic by alleging that (1) Atlantic's conduct was intentional and (2) MG is an Illinois corporation. *Walden* made clear that "[t]he 'mere fact that defendant's conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.'" *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 802 (quoting *Walden,* 134 S. Ct. at 1126) (alterations omitted). The "question whether harming a plaintiff in the forum state creates sufficient minimum contacts is more complex." *Id.*

Post-*Walden*, courts in this district have held that a defendant purposely directs its conduct at Illinois and reasonably should foresee being brought to court there when the

---

the parties intend for MG's arguments for specific jurisdiction for the state law tort claims against Atlantic to apply with equal effect to the copyright infringement claims involving related conduct. Therefore the Court addresses whether there is specific jurisdiction over Atlantic with an eye to all claims against Atlantic.

[7] MG also alleges that Atlantic intentionally advertised that it created the design for the Las Vegas Exhibit, even though Atlantic based the designs on the Renderings and knew that MG created the Renderings. MG does not allege that Atlantic aimed its advertisements at Illinois, so the Court does not address whether the advertisements create sufficient contacts for specific jurisdiction.

defendant reaches into Illinois by infringing the intellectual property rights of a plaintiff "at home" in the state, attempting to exploit the infringing conduct with knowledge that the plaintiff would be injured in Illinois. *E.g.*, *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, --- F. Supp. 3d ----, 2016 WL 3194445, at *5 (N.D. Ill. June 9, 2016) (defendant was subject to specific jurisdiction in Illinois after it infringed the trademarks of a plaintiff with a principal place of business in Illinois and exploited the stolen trademarks knowing that plaintiff would suffer in Illinois). "As a matter of policy, the law ought not require a holder of intellectual property . . . to go to the home forum of one who has, in effect, reached into the holder's home forum to take its property. When an out-of-state entity chooses to trade on the [property] of an entity in the forum state . . . it has, in the Court's view, established a relationship not just with the in-state entity, but with the forum state itself." *Id.* (quoting *Ariel Invs., LLC v. Ariel Capital Advisors LLC*, No. 15 C 3717, slip op. at 5 (N.D. Ill. Oct. 29, 2015)). MG alleges that Atlantic took advantage of MG's intellectual property by infringing on MG's copyright and severing MG's business with CoStar and Apartments. MG also alleges that it is incorporated in Illinois, and Atlantic submits evidence that it is MG's industry competitor, allowing the reasonable inference that Atlantic knew its competitor was incorporated in Illinois and an Illinois corporation.[8] Therefore, there is enough evidence at this stage to show that, taking MG's allegations as true, Atlantic knew it was infringing on an Illinois corporation's intellectual property and interfering with the Illinois corporation's business that arose from the intellectual property.[9] Thus, Atlantic has sufficient contacts with Illinois to authorize specific jurisdiction over Atlantic for MG's claims of

---

[8] Atlantic provides an affidavit from its Chief Operating Officer, and former Chief Executive Officer and President, who attests that Atlantic "offer[s] similar services and compete[s] for the same clients" as MG. Doc. 24-1 ¶ 9.

[9] Atlantic's Chief Operating Officer attests that Atlantic did not know CoStar had an existing contract with MG, Doc. 24-1 ¶ 11, but this goes to the merits of MG's tortious interference claims rather than to the issue of personal jurisdiction over the tort claims.

copyright infringement and the tortious interference caused by the intellectual property infringement. *See id.* (exercising specific jurisdiction over defendant accused of intellectual property infringement and related state law claims). Atlantic does not argue that authorizing jurisdiction violates the traditional notions of fair play and substantial justice, and therefore, having found that exercising jurisdiction over each Defendant is proper, the Court turns to Defendants' motions to dismiss for failure to state a claim.

## II. Direct and Vicarious Copyright Infringement (Count I & Count II)

MG alleges that Defendants constructed the Las Vegas Exhibit by deriving the work from the Renderings, in violation of MG's exclusive rights in its copyright. To state a claim for copyright infringement, MG must allege (1) that MG owns a valid copyright and (2) that Defendants copied "constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991); *see also Hart v. Amazon.com, Inc.*, No. 15-C-01217, 2015 WL 8489973, at *5 (N.D. Ill. Dec. 8, 2015) ("To state a claim for contributory and vicarious copyright infringement, a plaintiff must plead sufficient facts for a valid claim of direct copyright infringement."). In addition, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim[.]" 17 U.S.C. § 411(a). Compliance with the registration requirement in § 411(a) "is not a condition of copyright protection but is a prerequisite to suing for infringement." *Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009). "[T]he condition must be fulfilled before the litigation begins. Satisfaction of the condition while the suit is pending does not avoid the need to start anew." *Brooks-Ngwenya v. Thompson*, 202 F. App'x. 125, 127 (7th Cir. 2006); *see also TriTeq Lock & Sec. LLC v. Innovative Secured Sols., LLC*, No. 10 CV 1304, 2012 WL 394229, at *4 (N.D. Ill.

Feb. 1, 2012) ("To state a claim for copyright infringement, a plaintiff must allege . . . copyright registration (unless the work is a foreign work, the alleged infringement concerns rights of attribution and integrity of a work of visual art, or the plaintiff attempted to register the work and registration was refused)[.]"). MG does not allege it registered or applied for registration prior to filing suit.

Instead, MG argues that it alleges a "right of attribution" claim under the Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A. No copyright registration, or application, is required "for an action brought for a violation of the rights of the author under section 106A(a)." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 291 (7th Cir. 2011); *TriTeq Lock & Sec. LLC*, 2012 WL 394229, at *4 (copyright registration is not necessary if "the alleged infringement concerns rights of attribution and integrity of a work of visual art").

Rights of attribution and integrity in a "work of visual art" are a "limited version of the civil-law concept of the 'moral rights of the artist.'" *Kelley*, 635 F.3d at 291.

> "Rights of attribution" generally include the artist's right to be recognized as the author of his work, to publish anonymously and pseudonymously, to prevent attribution of his name to works he did not create, and to prevent his work from being attributed to other artists. "Rights of integrity" include the artist's right to prevent the modification, mutilation, or distortion of his work, and in some cases (if the work is of recognized stature), to prevent its destruction.

*Id.* at 296 (citations omitted). "Rights of attribution" and "rights of integrity" are reserved for artists who create a "work of visual art." 17 U.S.C. § 106A(a); *Kelley*, 635 F.3d at 298.

> "A 'work of visual art' is—
>
> (1) a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200

> or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or
>
> (2) a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author.
>
> A work of visual art does not include—
>
> \*\*\*
>
> (B) any work made for hire;
>
> \*\*\*
>
> A "work made for hire," is–
>
> (1) a work prepared by an employee within the scope of his or her employment . . . .

17 U.S.C. § 101. While MG alleges that Atlantic wrongly claims "performance" of the Las Vegas Exhibit's design, MG also alleges that the Renderings "were created by an employee of MG Design working within the course and scope of his employment." Doc. 1 ¶ 59. MG uses VARA's definition of works "made for hire" near verbatim to describe the Renderings. *See* 17 U.S.C. § 101 ("A 'work made for hire' is . . . a work prepared by an employee within the scope of his or her employment[.]").

The Renderings' purpose is also relevant to whether they are a work made for hire. If the purpose is "commercial promotion," then the work does not confer rights of attribution and integrity. *Martin v. City of Indianapolis*, 982 F. Supp. 625, 635 (S.D. Ind. 1997), *aff'd,* 192 F.3d 608 (7th Cir. 1999). MG designed the renderings for Apartments' trade show display; they were a design for a client's commercial promotion and intended to profit MG and attract more business for MG and its client. *See, e.g.*, Doc. 1 ¶¶ 33–37, 52; *see also id.* ¶ 53 ("Atlantic also continues to benefit [from the Renderings] from the fact that it is able to promote, via its website

and elsewhere, the infringing design as its own, attracting new customers."). Therefore MG cannot state a right of attribution claim for infringement of a work of visual art. Instead, it must allege registration of a copyright and because this was not done prior to filing, MG's copyright claims fail and the Court must dismiss it.

### III.  State Law Claims (Counts III–VI)

MG also brings claims for fraudulent misrepresentation and breach of contract against CoStar and Apartments and tortious interference with contract and prospective economic advantage against Atlantic. MG alleges that the Court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367. MG does not allege that diversity jurisdiction exists, and the Court cannot proceed on the assumption that it does. *See Downs v. IndyMac Mortg. Servs., FSB*, 560 F. App'x. 589, 591 (7th Cir. 2014) (refusing to find diversity jurisdiction when it was not pleaded in the complaint). Because the Court dismisses the copyright claims over which it has original jurisdiction at this time, the Court declines to exercise supplemental jurisdiction over MG's state law claims. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir.1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The Court therefore dismisses the state law claims against Defendants without prejudice and defers consideration of arguments on these claims until MG adequately alleges a basis for the Court's subject matter jurisdiction.

**CONCLUSION**

The Court denies CoStar and Apartments' motion to dismiss [11] and Atlantic's motion to dismiss [23] as to personal jurisdiction, and the Court grants Defendants' motions to dismiss as to the copyright claims, deferring consideration of MG's state law claims until MG pleads a sufficient basis for subject matter jurisdiction. Because the dismissal is without prejudice, MG may file an amended complaint by January 6, 2017.

Dated: December 1, 2016

SARA L. ELLIS
United States District Judge